1

2

3

4

5

6

7

8

9

10

11

12

13

14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Ricky Lee Sabin,

            Petitioner,

vs.

Ernest Trujillo, et al.,

            Respondents.

CV10-00555-TUC-AWT(JR)

**REPORT AND RECOMMENDATION**

15

16

17

18

19

20

21

22

      Pending before the Court is Michael A. Sabin's Amended Petition for Writ of Habeas Corpus (Doc. 8) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

## I.    **BACKGROUND**

In its Memorandum Decision affirming Sabin's conviction, the Arizona Court of Appeals summarized the factual background as follows:

> Responding to a report of a possible suicide, officers of the Marana Police Department were dispatched to the Sabin residence.  The first officer to arrive, Joshua Corn, immediately encountered two teenagers, Ron and Ashley, outside the house.  Both of them were "visibly distraught and upset." After Corn entered the house through the patio door, he discovered K.'s body in a hallway bathroom and a .357 revolver in her lap.

> Detective Richard Palma interviewed both Ron and Ashley a few hours later.  Ron, who had been K.'s boyfriend since September 2003, stated that he had been talking to K. on the telephone that afternoon when he heard a gunshot and the line went silent.  He and Ashley, a mutual friend of Ron and K., immediately drove to the Sabin residence.  When they arrived, Ron entered the house through a rear door, called to K., and ultimately found her body in the bathroom.  Ron called 911.  Ron told Palma that he had "no clue why" K. would have committed suicide, that their relationship was fine, that K. had not been depressed, and that she had not been struggling with difficulties at school or at home.  When Palma asked Ron if K. had kept a diary, Ron responded that it was "possible."

> Ashley told Palma that, although she did not know what would have immediately precipitated the suicide, K. "had trouble with her dad."  When pressed to explain the "trouble," Ashley said that Sabin had "raped" and "sexually molested" K. since she was seven or eight years old.

> The police then searched K.'s bedroom and discovered her diary.  At trial, Officer Corn read aloud select passages from the diary wherein K. stated she had been sexually abused by both her father and grandfather and that if she ever found out she was pregnant by her father, she would immediately kill herself.  Officers did not obtain a search warrant until after they had searched K.'s bedroom and discovered the diary.

> Marana Police Detective John Santoro interviewed Ashley a second time a few hours later at the main station of the Marana Police

Department.  During that interview, Ashley described the details K. had divulged to Ashley about the extent of, and manner in which, Sabin had chronically abused her.  Ashley told Santoro that K. had said she had tried to resist Sabin and that the abuse would happen as often as a couple of times per week.  According to Ashley, K. had stated that Denise, K.'s mother, had learned about the abuse the previous fall during a "family discussion" and had considered divorcing Sabin.  During this discussion with Santoro, Ashley confirmed that K. had kept a diary although Ashley had never seen it.

Several hours later, Detective Santoro and Bradley Roach, a deputy county attorney, interviewed Sabin at a police substation.  Before proceeding, Santoro advised Sabin that he was not under arrest and that the police simply wanted to "find out what [had] happened" to K.  After Santoro read Sabin the *Miranda* [fn1: *Miranda v. Arizona*, 384 U.S.  436, 86 S.Ct. 1602 (1966)] warnings, Sabin agreed to continued questioning.  Sabin initially told the police that he and K. "had a pretty good, great relationship" and that they were "very close."

Santoro then told Sabin that police had discovered K.'s diary and "found some things she wrote in it that . . . concerned [them]."  Sabin responded that K. had recently grown "more and more defiant."  But, when Roach asked Sabin about "a real big family discussion around like September, October or maybe even November of last year," Sabin admitted he had sexually abused K. since she was seven or eight years old.  For the next hour, Sabin offered details of the systematic abuse that had stared as "fondling" and escalated over the years to include masturbatory acts and both oral and vaginal intercourse.  The officers arrested Sabin at the conclusion of the interview.

On May 3, 2004, Ron volunteered to provide a second statement to police.  Ron revealed that K. had told him Sabin had been molesting her for nearly ten years.  Ron described the abuse as follows:

> I remember her telling me that he held her, he held her down with one hand and he would just forcefully throw her down[,] rip her clothes off and just do whatever she felt like.  He would, he would sexually do these things and he would anally do these things . . . [E]verything that you could possibly think of . . . was done.

3

1
2
> When asked if Sabin had "penetrated [K.] with his penis," Ron responded, "Yes . . . I asked her specifically how many times and she said over three hundred times."

3 *Answer*, Ex. A, pp. 2-5.

4     The State initially charged Sabin with one count of continuous sexual abuse of

5 a child, one count of sexual abuse of a minor under 15 years of age, two counts of

6 sexual conduct with a minor under 15 years of age, and five counts of sexual conduct

7 with a minor. *Id.*, p. 5. After the trial court granted Sabin's motion to suppress K.'s

8 diary, the State dismissed all but two of the charges. *Id.*, p. 6. Sabin waived his right

9 to a jury trial and stipulated to the admission of the evidence that was not suppressed

10 in the trial court's ruling on his motion to suppress. *Id.* The trial court found Sabin

11 guilty of one count of sexual conduct with a minor and one count of continuous

12 sexual abuse of a minor. *Id.*, p. 7.

13     Sabin waived his right to a jury trial on the aggravating factors for sentencing

14 and the trial court found that the State had proven two aggravating factors: the

15 severe emotional harm to the victim and her family, and the especially cruel nature of

16 the offenses. *Id.* The trial court sentenced Sabin to consecutive, aggravated

17 sentences totaling 37 years' imprisonment. *Id.*

18     Sabin raised five claims on direct appeal. He asserted that:

19
20
> (1) the trial court erred by denying his motion to suppress his statements to police because those statements had been obtained after police confronted him with K.'s diary, which had been suppressed, rendering his statements the "fruit of the poisonous tree;"

21
22
> (2) the admission of K.'s statements to both Ron and Ashley violated his Sixth Amendment right to confront and cross-examine witnesses;

4

(3) his convictions must be reversed because the State failed to provide sufficient evidence of the *corpus delicti* of the crimes;

(4) his waiver of a jury trial was "insufficient as a matter of law;" and

(5) the trial court erred by permitting the State to amend the indictment at the close of evidence because that resulted in a duplicitous indictment.

*Id.*, Ex. C.  In an Opinion filed November 13, 2006, the Arizona Court of Appeals affirmed Sabin's convictions.  *Id.*, Ex. A.  Sabin then sought review of the decision by the Arizona Supreme Court, which denied review by order dated October 30, 2007. *Id.*, Ex. F.

On April 11, 2008, Sabin filed a Notice of Post-Conviction Relief.  *Id.*, Ex. G. After Sabin's appointed counsel reported that he could find no tenable issue for review, *id.*, Ex. H, Sabin filed a *pro se* PCR petition in which he raised the following claims:

(1) the trial court erred by failing to properly advise him of his Fifth Amendment privilege against self-incrimination before waiving his right to a jury trial and therefore the waiver was not knowing, voluntary, and intelligently made;

(2) the trial court erred by denying his motion to suppress his statement to police because the trial court misapplied the "inevitable discovery doctrine and thus his statements should have been suppressed as "fruit of the poisonous tree;"

(3) the trial court erred by denying his motion to suppress his statements to police because the court had misinterpreted and misunderstood the motion;

(4) the trial court erred by admitting into evidence his statements to police because the State failed to establish the appropriate *corpus delicti* for the crime;

5

(5) reversal was required because Sabin did not knowingly, intelligently, and voluntarily agree to have the trial court conduct a bench trial on the stipulated evidence alone;

(6) the trial court erred at sentencing because it sentenced Sabin under the wrong state-law sentencing statute, the State did not properly allege the sentencing aggravating factors in the indictment, and the burden of proof for the aggravating factors had not been met; and

(7) the trial court erred by "allowing [Sabin] to be prosecuted for count two" because the indictment was duplicitous.

*Id.*, Ex. I.

In a Ruling dated March 19, 2009, the trial court found claims 1-5 precluded under state law and denied claims 6 and 7 on the merits. *Id.*, Ex. L. Sabin then sought review of his post-conviction petition in the Arizona Court of Appeals, and by Memorandum Decision filed October 1, 2009, the Court of Appeals granted review but denied relief. *Id.*, Ex. N. In doing so, the Appeals Court adopted the trial court's orders denying relief, and additionally found that claims 6 and 7 were precluded pursuant to Ariz.R.Crim.P. 32.2(a)(3) because they were not raised them on direct appeal. *Id.* p. 5. In a footnote, the court also added that "all of Sabin's Rule 32 claims properly were denied because they are precluded" as untimely under Ariz.R.Crim.P. 32.4(a). *Id.*, pp. 5 n.1 and 6. Sabin sought review of the decision by the Arizona Supreme Court, and on April 20, 2010, review was denied. *Id.*, Exs. O and P.

In the instant petition, Sabin raises nine claims:

<u>Ground One</u>:  the trial court erred by admitting into evidence Sabin's statement to police because it was obtained in violation of his constitutional rights.

6

<u>Ground Two</u>: the trial court erred by admitting the testimony of Ashley and Ron because their admission violated state evidentiary laws and Sabin's right to confront witnesses.

<u>Ground Three</u>:   the trial court erred by denying Sabin's privilege against self-incrimination in violation of the constitution.

<u>Ground Four</u>: the trial court erred because it "failed to allow the calling of witnesses" at the bench trial conducted on stipulated evidence.

<u>Ground Five</u>: the trial court erred by finding that the State had established the *corpus delicti* of the crime because the court's findings were based on uncorroborated hearsay statements.

<u>Ground Six</u>:  the trial court erred because the bench trial was based on stipulated evidence without additional witnesses.

<u>Ground Seven</u>: the trial court erred under state law when sentencing him because he was sentenced under the wrong state-law statute.

<u>Ground Eight</u>: the indictment was duplicitous and the trial court erred by imposing consecutive sentences.

<u>Ground Nine</u>:   post-conviction counsel was ineffective and the trial court abused its discretion by denying Sabin's motion for new counsel.

*Answer*, pp. 6-30

## II.   **LEGAL DISCUSSION**

### A.      **The Petition is timely.**

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations period must be dismissed.  *Id.*   The one-year statute of limitations on habeas corpus petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review."  28

1    U.S.C. § 2244(d)(1)(A).    However, the limitations period is tolled during the

2    pendency of a properly filed state post-conviction proceeding.    28 U.S.C. §

3    2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

4          In this case, the Arizona Supreme Court denied direct review on October 30,

5    2007, and direct review was complete 90 days later, on January 28, 2008.  *Bowen v.*

6    *Roe*, 188 F.3d 1157, 1158-60 (9th Cir. 1999).    Therefore, absent tolling, Sabin was

7    required to file the instant petition by January 28, 2009.  *Patterson v. Stewart*, 251

8    F.3d 1243, 1246 (9th Cir. 2001).

9          Sabin initiated his post-conviction proceedings 74 days later, on April 11,

10   2008.  *Answer*, Ex. G.  PCR proceedings were pending until May 13, 2010, when the

11   Arizona Court of Appeals issued its final mandate.  *Id*., Ex. Q.  Respondents contend

12   that Sabin filed the instant Petition almost a year after his PCR proceedings became

13   final, on May 11, 2011, and that when the 74 days that elapsed between the close of

14   direct review and the commencement of PCR proceedings are added, the total is well

15   beyond the year allowed for filing under the AEDPA.  However, May 11, 2011, is

16   the date on which Sabin filed his Amended Petition (Doc. 8).  Respondents make no

17   mention of the original filing date, but implicitly contend that the one year statute of

18   limitations ran unabated from September 14, 2010, until May 11, 2011, when Sabin

19   filed the Amended Petition now pending before the Court.

20         The Court notes however, that the relation back doctrine under Federal Rule

21   of Civil Procedure 15(c) is applicable in federal habeas actions.  *See Mayle v. Felix*,

22   545 U.S. 644 (2005).  The court finds relation back particularly appropriate under the

8

circumstances of this case where the Court dismissed the original petition without prejudice and the claims raised were replied in the Amended Petition. *See Garcia v. Yates*, 2010 WL 5582901 (S.D.Cal. Oct. 12, 2010). When the Amended Petition is allowed to relate back to the original Petition, the filing falls well within the one-year limitations period and the Amended Petition is therefore timely.

**B.  Exhaustion/Preclusion**

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999). A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement. The fair presentation requirement is not satisfied, for example, when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special

1   circumstances.  *Castille*, 489 U.S. at 351.  An exact correlation of the claims in both

2   state and federal court is not required.  *Rice,* 44 F.3d at 1403.  The substance of the

3   federal claim must have been fairly presented to the state courts.  *Chacon v. Wood*,

4   36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

5        A petitioner may also exhaust his claims by either showing that a state court

6   found his claims defaulted on procedural grounds or, if he never presented his claims

7   in any forum, that no state remedies remain available to him.  *See Jackson v. Cupp*,

8   693 F.2d 867, 869 (9th Cir. 1982).  "To exhaust one's state court remedies in

9   Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack

10  his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen*

11  *v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the

12  Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir.

13  1999).

14       A habeas petitioner's claims may be procedurally defaulted and precluded

15  from federal review in two ways.  First, a claim may be procedurally defaulted in

16  federal court if it was actually raised in state court, but found by that court to be

17  defaulted on state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729–30

18  (1991).  Arizona courts have been consistent in their application of procedural default

19  rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Crim.P.

20  32.2(a) is an adequate and independent procedural bar); *Cook v. Schriro*, 538 F.3d

21  1000, 1026 (9th Cir.2008); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir.1998)).

22  Second, a claim may be procedurally defaulted in federal court if petitioner failed to

present it in state court, but returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the claim.  *Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).   This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman v. Thompson*, 501 U.S. at 732.

### 1.    Application

As a threshold note, in ruling on Sabin's appeal of the denial of his PCR petition, the State Court of Appeals expressly affirmed the trial court's finding that the first five claims presented in the PCR petition had already been addressed by the Court of Appeals on direct review.  Then, citing Ariz.R.Crim.P. 32.2(a)(3), the Court of Appeals concluded that Sabin's failure to raise the remaining two claims alleging sentencing error and double jeopardy on direct appeal resulted in a waiver of these claims.  *Answer*, Ex. N., p. 5.  As all of the claims raised in Sabin's PCR petition were found to be precluded from review on procedural grounds, they cannot serve as a basis for establishing exhaustion.  *Coleman v. Thompson*, 501 U.S. 722 (1991).  Accordingly, the Court will look solely to the record of Sabin's direct appeal to determine if his claims have been exhausted.

### a.    Grounds One and Two

In Ground One, Sabin asserts that the trial court erred by admitting into evidence Sabin's statement to police because it was obtained in violation of his

11

constitutional rights.   In Ground Two, Sabin argues that the trial court erred by admitting the testimony of Ashley and Ron because their admission violated state evidentiary laws and Sabin's right to confront witnesses. *Petition*, pp. 6-11.  Sabin raised these claims on direct appeal as Issues One and Two and they were addressed by the Arizona Court of Appeals in its Opinion denying Sabin relief. *Answer*, Ex. A, 8-18.  These claims are exhausted.

### b.       Grounds Three, Four and Six

Grounds Three, Four and Six of the Amended Petition all relate to Sabin's claim that the trial court improperly conducted a bench trial based entirely on stipulated evidence.   The Respondents contend that each of these three claims is defaulted because, although Sabin raised variants on them in his direct appeal, he did not raise these precise claims.   However, a fair reading of the claims Sabin raised on appeal encompasses the assertions made in these three claims and they will be considered together on the merits.

In his direct appeal, Sabin's issue four was set-forth as follows:

> Whether Mr. Sabin's waiver of his "right to a jury trial" was insufficient as a matter of law because he was not informed that he was substantially waiving his right to a trial where he stipulated to all the evidence.

*Answer*, Ex. C, p. 12.  Grounds Three, Four and Six in the Amended Petition are each intertwined with Sabin's claim that his waiver of his jury trial rights was insufficient. Each of these three grounds allege that his constitutional rights were violated as a result of the allegedly defective waiver:  in Ground Three Sabin alleges his rights

against self-incrimination were violated; in Ground Four his right to call witnesses; and in Ground Six his right to a trial.

The Court finds that each of claims was raised and addressed in the Opinion by the Court of Appeals.  In the Opinion, the court lists a number of rights Sabin agreed to waive, including his right to a trial, his right to testify on his own behalf, and his right to call an confront witnesses.  *Answer*, Ex. A, p. 20.  The Court explained why it believed that Sabin had waived each of these rights.  *Id*., pp. 19-22. The Opinion establishes that the state courts had a "fair opportunity to act" upon these claims, *see O'Sullivan v. Boerckel,* 526 U.S. at 844, and they are therefore exhausted.

### c.    Ground Five

In Ground Five, Sabin asserts that the trial court erred by finding that the State had established the *corpus delicti* of the crime because the court's findings were based on uncorroborated hearsay statements.  Sabin raised this claim as his Issue 3 on direct appeal, *Answer*, Ex. C, and it was addressed and denied in the Court of Appeals' Opinion, *id*., Ex. A.  However, Sabin made no mention of any federal authority or theory in support of this claim.  *Baldwin v. Reese*, 541 U.S. 27, 28 (2004) (a claim is "fairly presented only if a petition described the federal legal theory).  Because this claim alleges only state law error, they are barred from habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Bueno v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993) ("A state court's evidentiary ruling is grounds for federal

1    habeas corpus relief only if it renders the state proceeding so fundamentally unfair as

2    to violate due process.").

3          Ground Five is thus procedurally defaulted because Sabin failed to present it

4    in state court, and returning to state court to present it would be futile.   *See*

5    Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in

6    prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for

7    review must be filed within thirty days of trial court's decision). The operation of

8    these rules precludes Sabin's return to state court and, absent cause and prejudice,

9    procedurally bars federal habeas review of the claim.   *Stewart v. Smith*, 536 U.S. 856,

10   860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998).

11                          **d.      Grounds Seven, Eight and Nine**

12         In Grounds Seven and Eight, Sabin alleges that the trial court committed

13   sentencing error and that double jeopardy resulted from the imposition of consecutive

14   sentences.  As part of Ground Nine, Sabin alleges that the trial court erred by denying

15   him new counsel.  Sabin first raised these claims in his PCR proceeding and the

16   Arizona Court of Appeals expressly found them defaulted on state procedural ground

17   and precluded because they were not raised on direct appeal.  *Answer*, Ex. N, p. 5

18   (citing Ariz.R.Crim.P. 32.2(a)(3).   As such, they cannot serve as a basis for

19   establishing exhaustion and Grounds Seven, Eight and Nine are precluded from

20   federal review absent a showing of cause and prejudice.  *Coleman v. Thompson*, 501

21   U.S. 722.

22

1    Additionally, in Ground Nine, Sabin asserts that his PCR counsel was

2    ineffective.  However, there is no constitutional right to counsel in state collateral

3    review proceedings.  *See* Coleman, 501 U.S. at 752.  Additionally, Congress has

4    expressly stated that such claims are not cognizable: "The ineffectiveness or

5    incompetence of counsel during Federal or State collateral post-conviction

6    proceedings shall not be a ground for relief in a proceeding arising under section

7    2254." 28 U.S.C. § 2254(i).

8    ## 2.    **Cause and Prejudice**

9    A federal court may review the merits of a procedurally defaulted claim if the

10   petitioner can establish cause for his noncompliance and resulting prejudice, or that a

11   miscarriage of justice would result.  To show "cause," a petitioner must show that

12   some objective factor external to the defense impeded his efforts to comply with the

13   state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386, 393–94 (2004); *Hughes v.*

14   *Idaho State Board of Corrections*, 800 F.2d 905, 907–08 (9th Cir. 1986).  To establish

15   "prejudice," a petitioner must suffer actual harm resulting from the constitutional

16   violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  *See also*

17   *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119,

18   1123 (9th Cir. 1996).  A federal court may also review the merits of a procedurally

19   defaulted claim if the petitioner demonstrates that the failure to consider the merits of

20   his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513

21   U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when a

22

1    constitutional violation has probably resulted in the conviction of one who is actually

2    innocent. *Id.*

3        Respondents contend that Sabin cannot meet the requirements for having these

4    defaulted claims evaluated on their merits. *Answer*, pp. 14-15. In reply, Sabin

5    reargues his claims, but offers nothing directly relevant to the inquiry into cause and

6    prejudice. Thus, there is no basis in record upon which the Court can excuse Sabin's

7    default of Grounds Five, Seven, Eight and Nine.

8        **C.    Merits**

9        Under the AEDPA, a federal court "shall not" grant habeas relief with respect

10   to "any claim that was adjudicated on the merits in State court proceedings" unless

11   the state decision was (1) contrary to, or an unreasonable application of, clearly

12   established federal law as determined by the United States Supreme Court; or (2)

13   based on an unreasonable determination of the facts in light of the evidence presented

14   in the State court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120

15   S.Ct. 1495 (2000). A state court's decision can be "contrary to" federal law either (1)

16   if it fails to apply the correct controlling authority, or (2) if it applies the controlling

17   authority to a case involving facts "materially indistinguishable" from those in a

18   controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212

19   F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is

20   contrary to federal law, the court must examine the last reasoned decision of a state

21   court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101

22   (9th Cir. 2002). A state court's decision can be an unreasonable application of federal

16

1   law either (1) if it correctly identifies the governing legal principle but applies it to a

2   new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

3   to extend a clearly established legal principle to a new context in a way that is

4   objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

5   **1.     Ground One**

6       In Ground One, Sabin asserts that the trial court erred by admitting into

7   evidence his confession to Santoro and Roach because it was obtained in violation of

8   his constitutional rights.    *Petition*, pp. 6-8.  The confession, Sabin contends, was

9   induced by material the police had obtained from K.'s diary (which was seized in

10  violation of the Fourth Amendment), and thus was the "fruit of a poisonous tree."

11  *Id*., p. 6.  In denying this claim on direct appeal, the Arizona Court of Appeals

12  identified the correct legal authority and reasonably applied it to the facts.

13      To guide its inquiry, the Arizona Court of Appeals relied on *Wong Sun v. U.S.*,

14  371 U.S. 471 (1963), where the Supreme Court held that "evidence seized during an

15  unlawful search could not constitute proof against the victim of the search. The

16  exclusionary prohibition extends as well to the indirect as the direct products of such

17  invasions." *Id.* at 484.  Under this rule, evidence may be subject to suppression if it is

18  the "fruit" of an illegal search or seizure.  For evidence to be considered the "fruit" of

19  an illegal search, "the illegality [must be] at least the 'but for' cause of the discovery

20  of the evidence." *Segura v. U.S.*, 468 U.S. 796, 815 (1984).  However, as the Arizona

21  Court of Appeals noted, "[t]he Court has never held that evidence is 'fruit of the

22  poisonous tree' simply because 'it would not have come to light but for the illegal

1   actions of the police.'" *Id.*   Thus the "but for" relationship is a necessary but not

2   sufficient condition for evidence to be the "fruit of the poisonous tree."

3        Rather, the connection between the illegality and the evidence must be such

4   that the "primary taint of the unlawful invasion" is not purged by intervening

5   circumstances. *Kaupp v. Texas*, 538 U.S. 626, 633, 123 S.Ct. 1843, 155 L.Ed.2d 814

6   (2003).  Thus, where a confession would not have occurred "but for" illegal conduct,

7   it may still be admitted if "that confession was 'an act of free will [sufficient] to

8   purge the primary taint of the unlawful invasion.' " *Id.*, *quoting Wong Sun*, 371 U.S.

9   at 486.

10       Here, the Arizona court found that intervening circumstances purged the taint.

11  The court noted that two statements from Santoro and Roach preceded Sabin's

12  confession.  Santoro told Sabin that he found some portions of the diary troubling,

13  and Roach asked about a family meeting that had occurred some months before K.'s

14  suicide. *Answer*, Ex. A, pp. 13-14.  The court noted, however, that it was only when

15  Roach asked about the family meeting that Sabin became emotional and began to

16  disclose details of the abuse.  *Id.*, p. 15.  The court noted that Roach's knowledge

17  about the meeting came from Ashley's second statement, which was prompted by the

18  acquisition of the diary.  *Id.*  Nevertheless, the court found that "logic dictates the

19  detective [Santoro] would have pursued a second interview with Ashley under any

20  circumstances, given that during her first interview she had provided evidence that K.

21  had been raped by her father."  *Id.*  In fact, the court reasonably noted that, "had the

22  police *not* discovered the diary, they would have had *more* of an incentive to talk

18

1  with Ashley, the only other source of information about the abuse, rather than less."

2  *Id.*, pp. 15-16.  The court then summarized:

3  >  From Ashley's first statement, Roach and Santoro already knew that K.
>  had made statements accusing her father of sexually abusing her.  And,
4  >  the trial court correctly found, the information in the diary was nothing
>  more than another statement by K. to that same effect.  Thus, even had
5  >  the state not improperly searched Sabin's residence and seized the
>  diary, it would have known about the abuse from K.'s statement to
6  >  Ashley.

7  *Id.*, p. 17.

8  Trying to convince the Court that the Arizona Court of Appeals assessment

9  was factually incorrect, Sabin suggests that the diary prompted Ashley's first

10  statement to police.  *Petition*, p. 7.  However, that assertion is not supported by the

11  record.  Looking back to Sabin's Opening Brief on direct appeal, he noted in his

12  factual statement that on the day of the suicide, Ashley disclosed to police that K.'s

13  father and grandfather had abused K.  *Answer*, Ex. C., p. 7.  The factual rendition in

14  that brief also recognizes that detectives were aware of "possible sexual misconduct

15  between K. and her father," before the bedroom was searched and the diary found.

16  *Id.*, pp. 7-8.  In the Amended Petition, Sabin points to no evidence which might cause

17  the Court to question the Court of Appeals' determination, which was consistent with

18  his factual statement in his Opening Brief on direct appeal.  The Arizona court's

19  analysis of this claim cited the correct law, correctly applied it to the facts, and is

20  convincing in its conclusion.

21  / / /

22  / / /

### 2.      Ground Two

In Ground Two, Sabin argues that the trial court erred by admitting the testimony of Ashley and Ron about what K. had told them because the testimony violated state evidentiary laws and Sabin's Sixth Amendment right to confront witnesses. *Petition*, pp. 9-11.  The Arizona Court of Appeals, citing *State v. Comer*, 165 Ariz. 413, 799 P.2d 333 (1990), and *State v. Kling*, 212 Ariz. 372, 132 P.3d 311 (App. 2006), correctly applied harmless error analysis to this claim.  The standards set-forth in those cases are the same as those under federal law, which allows for harmless error analysis of Confrontation Clause errors.  *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009). Applying harmless error analysis in the habeas context, a petitioner is entitled to relief only if the improperly admitted statements had a "substantial and injurious effect or influence in determining the jury's verdict."  *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Factors to consider in determining whether a Confrontation Clause error was harmless include "the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case." *Ocampo*, 649 F.3d at 1114 (internal quotation marks omitted). The error is harmless unless there is "grave doubt" about whether a constitutional error substantially influenced the verdict. *Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir.2004).  "Grave doubt" exists when "the record is so evenly balanced that a judge

1  feels himself in virtual equipoise as to the harmlessness of the error[.]" *Merolillo v.*
2  *Yates*, 663 F.3d 444, 454 (9th Cir.2011) (quoting *O'Neal v. McAninch*, 513 U.S. 432,
3  435 (1995)) (internal quotation marks omitted).

### 3.    Grounds Three, Four and Six

5  As noted above, the outcome of Grounds Three, Four and Six depends on the
6  validity of Sabin's waiver of his trial rights.  Specifically, he alleges that his waiver
7  was not knowing and voluntary and resulted in the violation of his rights against self-
8  incrimination, his right to call witnesses, and his right to a trial.  The Arizona Court
9  of Appeals' determination that Sabin's waiver was effective involved neither an
10  unreasonable application of federal law, nor an unreasonable determination of the
11  facts.

12  In its Opinion, the Arizona Court of Appeals listed several trial rights,
13  including those at issue here, and cited Arizona authority for the proposition that an
14  effective waiver of those rights must be "knowing, voluntary, and intelligent."
15  *Answer*, Ex. A, p. 20 (citing *State v. Avila*, 127 Ariz. 21, 25, 617 P.2d 1137, 1139
16  (1980)).  The standards are the same under federal law, where an effective waiver of
17  a constitutional right must be knowing, voluntary and intelligent, *Brady v. United*
18  *States*, 397 U.S. 742, 748 (1970), and the right to a jury trial can be waived, as long
19  as the waiver includes the consent of the prosecutor, the approval of the court, and
20  the "express and intelligent consent of the defendant."  *See Crosby v. Schwartz*, 678
21  F.3d 784, 788 (2012), *citing Patton v. United States*, 281 U.S. 276, 312 (1930),
22  *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970).

1    In the Amended Petition, Sabin argues that his waiver was not made

2  knowingly because, although he agreed to a bench trial, he did not know it would be

3  based on stipulated evidence and that he would not be permitted to call witnesses.  In

4  denying this claim, the Arizona Court of Appeals found that the record demonstrated

5  that Sabin knowingly, voluntarily and intelligently agreed to submit the case to the

6  trial court on stipulated evidence.  *Answer*, Ex. A, p. 21.  In support of its conclusion,

7  the court found:

> First, [Sabin's] counsel proposed the idea and itemized the evidence to
> be considered in Sabin's presence.  Next, still in the presence of Sabin,
> the court and counsel thoroughly discussed each piece of that evidence.
> The trial court then placed Sabin under oath and ascertained from Sabin
> that he was clear-headed and not under the influence of any
> medications.  Thereafter, the court directed Sabin to review and sign a
> form that specified the rights he was foregoing by waiving his right to a
> jury trial.  Then the court itself advised Sabin of the rights he would be
> giving up and the sentencing ranges he faced if the court found him
> guilty.  In response to the court's questions, Sabin confirmed that his
> decision to forego a jury trial was voluntary and intelligent.  Although
> the court did not focus on the distinction between a bench trial with live
> testimony and a bench trial on stipulated evidence at every step of the
> colloquy, the trial court made it clear to Sabin that the questions the
> court was asking Sabin related to his waiver of the right to a jury trial
> in the context of the latter procedure.

*Answer*, Ex. A, p. 21.  In support of its finding that Sabin was made aware of the

nature of the proposed trial, the court quoted a portion of the trial court's colloquy

with Sabin:

> I understand that you intend to waive your right to a jury and to
> submit this case for my decision based on the evidence that counsel
> discussed here in court, stipulated to provide me a list of; is that
> correct?

22

1    *Id.*, n. 11.  Responding to this question, Sabin stated, "That's correct, Your Honor."

2    *Id.*

3          On this record, the Court finds that the Arizona Court of Appeals decision was

4    reasonable.  Sabin was informed of the procedure and assented to a bench trial based

5    on stipulated evidence.   The waiver was confirmed in writing and Sabin was

6    addressed by the trial court, which found that his waiver was made knowingly,

7    voluntarily, and intelligently.  *See, e.g., Hensley v. Crist,*  67 F.3d 181, 185 (9th Cir.

8    1995) ("An examination of the record indicates that Hensley was fully aware of the

9    scope of the right he was waiving and did so as a strategic decision.")

10   **III.    RECOMMENDATION**

11          For the foregoing reasons, the Magistrate Judge **recommends** that the District

12   Court, after its independent review, **dismiss with prejudice** Petitioner's Amended

13   Petition for Writ of Habeas Corpus (Doc. 8).

14          Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and

15   file written objections within 14 days of being served with a copy of this Report and

16   Recommendation.  If objections are not timely filed, they may be deemed waived.

17   The parties are advised that any objections filed are to be identified with the

18   following case number:  **CV10-00555-TUC-AWT**.

19          Dated this 21st day of February, 2013.

20

21

22                               _Jacqueline M. Rateau_
                                 Jacqueline M. Rateau
                                 United States Magistrate Judge